Excuse me, SEC, GPB Capital Holdings, LLC versus Chenteel et al. Mr. Derington. Good morning, Your Honor. Good morning. You're reserved one minute for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. Good morning, and may it please the Court, Mike Derington on behalf of Defendants Appellants Jeffrey Schneider and Ascending Capital. I'll be addressing the first two issues in our briefs today, and co-defendant counsel, I understand, will be focusing on the third and fourth issues in our briefs. The district court committed reversible error when it appointed a receivership over GPB, despite finding, first, despite the absence of a, quote, clear necessity for a receivership to protect and preserve the property, which is required by Second Circuit precedent as a prerequisite for receivership. And second, despite the district court found that the likelihood of success on the merits of the SEC in this case is, quote, unclear, even though 150 years of equity jurisprudence and the traditional rules of equity that apply in these circumstances require at least a probable success on the merits. Before you get to that, I think there's a preliminary question, which is this, there was an order here. There was an amended monitor order that had a very specific provision, paragraph 21, that said if GPB does not comply with the provisions, doesn't make changes in the cure period, upon motion of the SEC, the monitorship shall, shall convert to a receivership. So independent of all this case law about when a court should appoint a receiver and what the criteria should be, why can't the court just enforce, and I think this was an agreed-upon order, right? This was an agreed-upon order by everybody, right? I believe GPB, the entity, had consented. Okay, but in any event, this is the order that was in place, and certainly doesn't the district court, under the authority of this order, say, I don't think there's any, you can correct me if I'm wrong, I don't think you're challenging, at least on appeal, that this did not comply with the provisions of the order, right? You're not challenging those findings on appeal? We are challenging those findings, as both under de novo and clearly erroneous. Under either standard of review, we believe there was no violation of the amended monitor order. Why was there no? There was an appointment, right, of new managers. There was an amendment to the operating agreement to give them up to $400,000 each in compensation, right? You're not, that's not, you're challenging that that's a violation of the order? On appeal, we have not challenged that there was an attempted amendment. We do challenge that this was, we submit not a violation of the order. I want to quickly go back to your first question, though, Judge Bianco, which is about whether. So we're going to assume it was a violation of the order then? No, we do not. We challenge this, this was not a violation of the order. My first question is, assuming it's a violation of the order, why do we have to get into what the standard is for appointing, if there is no order, for appointing a monitor and what findings need to be made when there's a clear provision as to what the remedy would be if there is a violation of the order? It's going to be converted, shall convert to a receivership. So upon a motion, and it does not say that the Second Circuit requirements, the order does not say Second Circuit requirements will be removed before there is a order of a receivership, so it's not an automatic conversion. Why is it not an automatic conversion? I mean, isn't this a waiver of any argument that there's some other standards involved? If you say if A happens, B shall result. So you then get to say if A happens, B might or might not result. I don't understand how that's not a waiver of any argument. So as an initial matter, I'd just like to make clear that Mr. Schneider and Ascendant Capital do not consent to, I believe the record doesn't show any consent, but if there is. Yeah, well, who cares? It's GPB who's getting the receiver. So GPB gets the consent, right? Because they're the ones subject to the order. And Mr. Gentile, as I thought at the time, who was the person who controlled it, was fine with it, too. And that's, he was the one who allowed GPB to consent. So, Judge Nardini, in response to your question, shouldn't they? Let me just answer that part. Didn't Mr. Gentile consent and agree to let GPB, the person who was then controlling it, didn't he allow GPB to sign on to this? I'm not sure one way or another whether it's in the record what happened for why GPB consented. I'm sure that's a question for. But GPB did consent. I believe GPB did consent to the original monetary shift order. But I mean, this Court set a precedent in the Citibank v. Nyland case. There's actually, which had a stronger argument for a, quote, unquote, waiver under the agreement there, because it wasn't just a court order. There was a mortgage agreement that said that if there is an active default, then there shall be a conversion to a monetary shift. This Court held that there is no automatic conversion, even if it's so agreed. So you're saying that that was a private agreement case as opposed to a court order saying if X happens, Y will happen? Right. So I. And you're saying that that is a stronger case or waiver than the court order itself? Correct, Your Honor, because in order to have a waiver, there has to be a knowing waiver of a right. And here, certainly, Mr. Gentile and absolutely Mr. Schneider wouldn't have waived thinking that a district court might order a equity receivership without even having jurisdiction. Well, it sounds to me like the claim now is that they're trying to write exceptions into the AMO that were not written. It was very straightforward. If A happens, B results. And now they're trying to say, well, there was an understanding that there were several conditions out there. And we didn't mention them. You didn't mention them. They're not in the order. But I don't see how they get to assume that all these other conditions are in there when they're not. If someone stipulates to something, they stipulate to it. They don't say, well, my stipulation doesn't really count because, you know, I privately had a number of assumptions about what might have to happen before my stipulation was effective. So I do want to come back to the assumption and the predicate of this line of questioning, because we firmly believe that there was no violation. But in these circumstances. Go ahead. I'm sorry, Your Honor. Please, please. In these circumstances, Nyland says there's no automatic conversion even if there's an agreement by the parties. There, the agreement was actually in a mortgage agreement. The parties knew that if an event, the predicate default happened, there could be a conversion. Here, there's no discussion of if Mr. Gentile attempts to make appointments in the monitor, exercising his authority under the Monday Monitorship Agreement, rejects those, and they never become effective, even if you assume that that's a violation. There was no. They're saying because he didn't do it within 10 days, they notified him, I think, was over a month before anything happened, right? So why isn't that a violation of the provision? There was no cure within 10 days once he was notified that they viewed this as a violation of the order, right? Well, GPB could not have violated the provision. And that's what's required here for there to be an automatic conversion, because GPB, within 24 hours, rejected and refused to recognize the attempted appointments. So there's really. They had the authority to do that? I'm sorry, Your Honor? They had the authority to do that? GPB? Yeah. How? How did they have authority? I thought he owned whatever it was. He was the person who controlled it, and he had authority under the operating agreement to appoint the managers, right? And doing that violated a court order that said don't do that. And he said, well, I'll do it anyway. So how did GPB have the authority to say no? Well, GPB did say no. I'm not asking that. I could say no. I might not have authority. How did GPB have authority to say no? Well. To him. How did they have authority under what? How did they have any authority to say no to him? The court had authority. The monitor had authority. But then how does GPB have the right to say, no, no, no, what he did doesn't actually count. It's a matter of corporate law. It didn't happen. Well, so GPB, as a matter of corporate law, did not recognize the appointments. The monitor. How did they have authority to not recognize them? That's my question. How did they have authority to not recognize the appointments under corporate  Yeah. In other words, who cares that they said no? Well, the amended monitor order anticipates that there could be a conversion, a motion for a conversion, based on whether GPB is the one who violates. And GPB did not violate here. The entity did not actually retain any managers, which is a prerequisite. No, no, no. But you're saying GPB didn't violate because their executive didn't violate. But that's not a question. GPB is a business entity, right? It's a legal entity. And their controlling shareholder, whatever he is, took an action, caused GPB to take an action that apparently the manager, whoever it was, the guy who was in charge, didn't like. Well, not only that, but the monitor, under a proper exercise according to the monitor of authority, rejected it. So nothing became effective under the amended monitor order. So I guess your view, then, is that there is no world in which until he could have ever violated the order, because the monitor would have always stopped him in his tracks, no matter what sort of malfeasance he attempted. Because there was a monitor in place to stop him, then there could never be a problem. As long as the monitor is doing their job, there's nothing Mr. Gentile could possibly do to cause GPB to violate. I mean, that seems to be the consequence of your argument. I think what really boils down to... Is that the consequence of your argument? No, I think... As long as the monitor stops him from whatever attempt he makes to violate the order, there could never be a violation. So the... Is that the logical consequence of your argument? As long as the monitor stops him? Yeah. I think that if so long as GPB and the monitor effectively do not do anything, contrary to the amended monitor agreement, then by law there is no violation. Here are the two prongs, 6E and 6D, that would be required to have been violated in order for, based on the SEC's argument there, to be a conversion, or that there would be a retention of managers, and that certain compensation is paid. Neither, the managers were not retained, and there was no compensation paid. So there could not have been a violation, and that's in addition to the fact that in order to have a receivership, you must... I mean, they were retained. They were for a while. No, Your Honor, they were not retained. Well... No dollars were expended on them, which is... That doesn't matter. I mean, if I don't get paid until the end of the month, that doesn't mean I haven't worked for the month. I mean, you're just saying, what, because they ultimately didn't get the paycheck at the end of the day, that in the meantime there wasn't a period that was basically a period during which his appointment of the managers wasn't cured. It wasn't a period where they were... The operating agreement was amended, right? So this was an attempted amendment and an attempted appointment, which were rejected under the court order. So they didn't take effect. I still don't understand the attempt. He did it for a while, and later it was undone. I don't see how that constitutes an attempt. Well, under the curability... An attempt means you never tried. I tried to rob the bank, but I never got to the bank. This is, I did it. I did change things. I did appoint the managers. But after a certain period of time, it was undone. I disagree with you there, Judge Nardini. Out in the open, with all parties aware of what was... Over Memorial Day weekend? Of what was going on. I'm sorry. Just be careful when you say out in the open, right? Didn't it happen over Memorial Day weekend without any previous notice to the monitor? Right. So there was no... So not really out in the open. I disclosed and later revealed to the monitor. There was a Rule 60 motion. There were letters that went out.  So this was not a secret. Not at the outset. Not at the outset. I believe within days. Right. So not at the outset. Sure. And so... So that's a yes, not at the outset. Well, it depends on how you define outset. Okay. So let's say something happens on day one, and it's revealed on day four. Are you saying the revelation happens at the outset? I just want to make sure we're using the same words here. So the notification is to GPB, who is working with the monitor, who's working with the SEC. I guess my suggestion is if you're trying to make an argument, you may want to... I'm sorry? If you're making an argument, you may want to parse your words more carefully. Understood, Your Honor. And so in order to actually violate the amended monitor agreement, there are two provisions here, and one of them has to be retention and one of them has to be compensation. And so whether there's authority or not is an interesting question, but it doesn't actually bear on, was there a retention of the managers by GPB, the entity? And... We got the argument. We heard it. Okay. May I just add one point, Your Honor? You have rebuttal. Okay. Thank you, Your Honor. Okay. We'll hear from Ms. Rivera. Rivera, Adele. May it please the Court, Adriana Rivera for David Gentile. Let me just go straight to the question that Your Honors were just focusing on. And I want to be very clear what the order says. The monitor will have the authority to approve or disapprove of the following actions. Any material change to compensation of any executive officer and any retention by GPB of any management-led level professional. So Mr. Gentile provided...  Where are you reading from? The amended monitor order, which is at A180... I have it in front of me. What paragraph are you reading? Paragraph 6, subsections D and subsection E. This is focusing on paragraphs 20 and 21, right? So you're directing us now to paragraph 6. The amended monitor order. Yes. Which is the operative one. Yes. Yeah. Right. And so why there was no violation of the paragraphs that Judge Srandini cited was because what happened was Mr. Gentile made the appointments. On May 27th, he gave notice to GPB of those appointments. On May 31st, he filed publicly on the docket and disclosed that he had made those appointments. And the monitor, as is his right, specifically as the monitor order provides, rejected that. He disapproved. And GPB said, we agree. We disapprove as well. And therefore, there was no action taken, none. There was no compensation. There was no meeting with any of the managers. There was no change. There was no action taken. That suggests that Mr. Gentile's action was not an action. That there needed to be a follow-up action. Yes. There needed to be, Your Honor. Why? Well, because what the monitor order says is that the monitor. But under the operating agreement, who had the authority, as it existed at the time, who had the authority to hire the new managers? Mr. Gentile had the authority to appoint the managers. So he did. So he took an action. He took an action of appointing the monitors. On behalf of GPB, as he was allowed to do under the operating agreement. That's right. So I don't understand why you're saying when he took an action for GPB, there had to be another action sort of by the preexisting officers of GPB for GPB to have taken an action. That's what I don't understand. So why I'm saying that, Your Honor, is because in order for there to be a violation of the amended monitor order, there needed to be action taken in contravention of the order. The order specifically says the monitor has the right to disapprove. So you're saying that the only actions that could possibly be taken in contravention of the order are orders that, or actions that were approved by the monitor. You presuppose something the monitor says is okay. That's the only thing that could be a violation? No, Your Honor. Or things where the monitor is asleep at the switch and doesn't bother even. No. And that's not, that's exactly not what the monitorship order provides. And that's why it was effective here. Because there is action that can be taken by GPB, and it is up to the monitor to approve or disapprove. He disapproved. And therefore, there was no further. Let me say it this way. There was no further action. Let's say GPB, but I'm not understanding how your argument relates to what the monitor did. If GPB had said, or when we say GPB, if Mr. Gentile said I want these four new managers, I appoint them. And whoever was the executive in place at the time of GPB said, yeah, that's great. And then the monitor said, no, I disapprove of it. Would your view still be that never happened? Not that it didn't happen, Your Honor. That there was no violation. That there was no violation. That there was no violation. The violation. That goes back to my question. Is your theory that the only way you could get a violation of the monitorship order is if the monitor approves it? No. There could be other ways. How? Theoretically, Your Honor, if Mr. Gentile had somehow gained inappropriate access to the funds of the company and had stolen them and hadn't told anyone, that would be a violation. Sure. That's not what happened here. So what about the things about the amended monitor has the authority to approve any material change to compensation or retention of any management-level professional? You're saying there's no way that could be violated? No, I'm not saying that. How could that be violated? That could have been violated if, for example, over the objection of the monitor, they would have paid out something above what the monitor had approved. So it's not retention, but they would have had to actually give them the money. Well, there's two different prongs. It would be there is retention and then there's compensation. Yeah. So put aside the compensation and the retention. Is there any way that could have been violated in your view? Yes, there could have been. For example, well, so Mr. Gentile would have appointed the managers. The monitor would have disapproved, and yet the managers would have taken action as managers of the company. Let's take a step back. My understanding of why you're suggesting that this wasn't a violation, the amended order required approval before doing those things, right? Didn't it require before he amended the operating agreement, appointed new managers to get approval? He did those things without any approval, and when they called him on it, then it was subsequently withdrawn after the cure period had ended. So isn't the fact that he didn't seek approval in advance of doing these things a violation of the order? There was an approval procedure that he violated by doing these things first. No, Your Honor. That's not how the order reads. It doesn't say he's allowed to amend the operating agreement, install the managers, set compensation, and then go to the monitor and ask for approval after he did the things? That's the way it works? Yes. That's how I read the order, Your Honor. Does the monitor negotiate a protocol with management governing the timing and form of the approval process? Did that happen? And did this conform to that? Well, there's nothing in the record to suggest that there was any kind of protocol that we're aware of, Your Honor. So I can't tell you that there was or there wasn't one. But the more important point here is that under this court's – I feel like this is a coup, that he did this – There was no coup. He didn't get the whole idea of the approval process to avoid these things happening without the monitor approving them. He did all these things first. Well, Your Honor – He didn't show up on day one, as Judge Nardini suggested, and say, here's what I would like to do. Can I have approval? He did those things. And then – So, Your Honor, let me be very clear. Also, what happened was Mr. Gentile is not a party to the amended monitor order. And so what happened was he tried to actually avail himself of the amended monitor order. And both GPB, the monitor, and the magistrate judge says, you can't do that. Go to Delaware. That was the mediation thing. Well, yes, that was about the mediation. Yes, but we're putting that aside. But it's not just the mediation. Hang on. Why didn't he ask for preapproval? Forget about mediation. Why didn't he ask for preapproval? It was not just mediation, Your Honor. It was also about other requests that Mr. Gentile had made, that the company said, you can't avail yourself of any of this. Go to Delaware if you want to do that. So Mr. Gentile, acting in good faith, consulting with counsel, did take action under Delaware law. And then he complied with the monitor order. When they disapproved of his appointments, he took no further action. So, but more importantly, besides that, it is an extraordinary and drastic remedy to impose a receivership. And you cannot do that simply by automatic conversion. There is not a single case that has been cited that suggests that you can automatically convert to a receivership when there is no imminent risk of harm to any of the assets, when it doesn't meet the standards that this Court has set forward for imposing a receivership. So even if there is a receivership, would your client be able to object to any proposed plan, a disbursement plan by the receiver? Yes, there would be an opportunity to object, yes. So what harm is imminent? So, no, the harm that would have to be imminent was from Mr. Gentile's actions. And there was zero harm that was imminent. But what harm? I mean, in the court has still yes.  From imposing a receivership? So there's the authority or the ability to object to any proposed disbursement plan. Well, first of all, he supports the reasonable distributions. So that's not the issue. The issue is imposing a receivership over someone's property. He is the sole owner of this business, right? And you need to. But he's not the sole owner of the funds, right? He is the sole owner of. All the investment funds belong to these investors, right? Well. So let's just be clear. This is not a pot of money he owns, right? No. So he owns. Does he own the pot of money? He does not directly own the pot of money. No one does. Does he indirectly own the pot of money? Well, he's an investor. He's a limited partner. And so he does have some of that. You're talking about the whole pot. I'm not talking about. Not the entire pot. No one. No one owns. No one owns the entire pot. But he does own GPB capital over which there is a receivership order that the district court ordered. If I could just go back to Judge Carney's question, I had the same question. All the government is. All they're seeking to do here is to preserve the status quo through a receiver. If there is going to be any distribution of funds, there has to be another approval process to which your client can object to it. We have numerous cases out there that say you don't. It's not an injunction where you need to prove likelihood of success on the merits. If you're preserving the assets, you're preserving the status quo. And although it's a conversion from a monitor to a receiver, it's all being done to preserve the assets. So why would you need to show. It is not being done to preserve the assets. The monitorship already does that. The monitor order already provides for the distribution plan to occur. That could have happened before Mr. Gentile took those actions. It could happen today. And then what's going to happen affirmatively as a result of the receiver being put in place that your client won't have an opportunity to object to? No, so there's two things that will happen. His property will be taken and the monitor, which will then be the receiver, will liquidate all of the assets of the business in which he owns. But before any liquidation happens, as Judge Carney pointed out and the district court pointed out in a footnote, in the actual receivership order, it says there's a whole procedure that the plan will have to be submitted and there will be opportunity to object to it. I'm not referring to the distribution plan, which Mr. Gentile supports. I'm talking about the liquidation of all of the assets that are currently in the funds. But those aren't his funds. He owns the company. It is his company. It is the company that is holding the funds. That's right. No one's taking his funds away. They are taking his company from him. And they're preserving it for the purpose of ensuring that the funds that are held in trust for all these investors are not dissipated, for example, by him hiring all these other people who are going to draw large salaries. They were never going to be dissipated, Your Honor. The monitorship order already in the ---- It was going to be he was hiring people who were going to draw salaries. They were not going to be dissipated because the monitor order already protects he has no access to the bank accounts. He has no access to these assets. But they were going to have all these funds. They were going to have management funds. They were going to draw down. It's the same as GPB is doing today and the same as being provided for under the amended monitor order. During the period of time that this was pending, GPB's assets accumulated in value under the monitor. There are $1.3 billion worth of assets that have now accumulated for $96 million of interest, regardless of what Mr. Dintelli did. So the status quo is going back to the monitorship order and allowing the distribution plan under the monitor order. Thank you. Thank you. You have one minute in rebuttal. Thank you. May it please the Court. Morgan Brady-Lyons for the SEC. I would like to begin by making two points. One, this Court can and should affirm the District Court on the narrow ground that as GPB Capital agrees, Dintelli caused GPB Capital to violate the consented-to monitorship order, which expressly provided that in the event of a violation, the Court could convert the monitorship to a receivership. And two, at this time in the case, we believe that a receivership is the best structure to provide stable leadership for GPB Capital and to enable the resumption of distributions to the thousands of investors who have been waiting since 2018 for access to their funds. With respect to point two, I wanted to clarify the limits of the monitor's power under the current circumstances. The amended monitor order does not empower the monitor to distribute funds. GPB Capital, with the monitor's approval, may resume distributions to investors in any of the GPB funds consistent with the investment objectives of the GPB funds. But the corporate governance crisis created by Dintelli's interference has left GPB Capital unable to accomplish the objectives for which a monitor was appointed, provide stable governance for GPB Capital, and resume distributions to investors who have been waiting years. Can you fill in that blank a little bit? It wasn't clear to me why it is that GPB, and maybe your fellow counsel will be able to answer this, why they haven't, I don't understand the particulars of why they haven't been able to come up with a distribution plan. I think my counsel here can speak to that as well, counsel for GPB Capital, but I think part of it, Your Honor, is this concern that because, unlike as presented by appellants, Dintelli did take the position that he had appropriately appointed these managers. So there was confusion long after the monitor had said, I disapprove of this appointment, and not until really the magistrate judge issued the reporting recommendation did Dintelli withdraw those appointments. So there was confusion for a long period of time over whether, if GPB Capital did take steps to distribute funds, they would be attacked as having sort of operated without appropriate authority, and if potentially investors who received distributions could be subject to clawbacks, which would be really a terrible outcome for them. Assuming we don't just rely on the order itself as providing the authority, does the SEC agree that if a receivership is going to be able to distribute funds, or they would, as you heard argued, liquidate assets, that that's something affirmed, that's just as preserving the status quo, that that's some affirmative authorities that then would be along the lines of an injunction that would require a likelihood of success determination? We don't agree with that, Your Honor. I think here there are numerous Second Circuit cases that don't. I think what appellants are citing too are cases that aren't officially imposing preliminary injunctions. For example, if you're enjoining someone from future violations, that that's an injunction and you need a likelihood of success determination, right? Because something, not just preserving the status quo, you're creating a contempt? Yes. So why isn't liquidating assets that haven't been liquidated yet, or distributing money along the lines of something affirmative that would require a likelihood of success? Why shouldn't that be the why? Just two responses, Your Honor. One quickly, as I think this panel realizes, for the money to actually be distributed, there will be further court action. The receiver would propose a plan for it to be subject. There could be liquidation of assets, even though a lot of them have already been liquidated, but there are some assets that are not liquidated that the receiver would be able to liquidate. No additional process. Is that true or not true? I think, Your Honor, that the monitor and GPB Capital have been liquidating assets as the case has progressed. And, in fact, I think appellants were very pleased. They tout the $1.3 billion number. They've been liquidating them sort of as is appropriate to preserve them. But the receivership could do it without their approval, right? If receivership doesn't have to get their consent to liquidate additional assets, right? I think that's correct. In terms of the standard, Your Honor, I think we would say that we believe the standard, and I think the Second Circuit's case law is consistent with this, the standard should be tailored to the relief requested. So in a case where a preliminary injunction isn't joining a defendant's conduct, showing a likelihood of success is sort of very related to that relief because it's about whether they've violated the laws. Here we think the district court did make findings about the imminent risk of dissipation and what the purpose of the receivership here is about the assets, preserving them, protecting them, and distributing them. And so we think sort of the likelihood of success on the merits of the securities law violation, as the district court found, was not as relevant as their findings about dissipation. If we were to disagree with you, it seemed to me that the recent convictions would affect the likelihood of success, the SEC's success on the merits in the civil action. We agree with you, yes, Your Honor. We think that's true. If this court did feel that a likelihood of success had to be shown, certainly take judicial notice of the recent convictions. But, of course, those may be subject to appeal. Yes, Your Honor. Could you just update us on the schedule there? Rule 2933 motion's been filed yet. I believe that they have filed them. My counsel, I think that they're fully briefed, but I think have not been ruled upon. Fully briefed by both sides? Yes. Okay, so we're waiting for a ruling on that, and then at some point in the future there will be a ruling, and if they're denied, at some point there's a resentment. Has the sentencing already been scheduled for February? March. March. But they also argue there are offenses they could have raised here in the civil case that weren't raised. They argue that the government narrowed the misrepresentations. You know, only one misrepresentation had to be found for there to be a guilty verdict, whereas here, obviously, there's much more than that. So there's some other issues related to that. Yes. We're not really in a position that nobody's analyzed those types of things, right? No, Your Honor, and we're just because the court has broad equitable discretion to appoint a receiver. We think it's certainly something the court could consider and could consider in deciding to lift and stay, but obviously there are various considerations that they did raise. The main thing the receiver could do that the monitor can't do is propose and authorize a distribution plan subject to court approval and then infatuate that. Is that correct? We think that's the primary difference here that will really make the most difference to investors. The receiver would also, essentially, the receiver, and there is a receiver order in the record, would have stronger powers than the monitor. The receiver really steps in and takes over to run GPB capital. And can liquidate assets without their approval. Yes. The monitor cannot liquidate assets without approval or consent? Not with consent, certainly, of Mr. Chantilly. With the company. With the company, yes. So I think the receiver would be stepping in. A receiver would not need the approval of the company. The receiver could liquidate assets on his or her own, correct? I believe that's correct, Your Honor. I think GPB Capital's counsel can also speak to how that process has worked thus far. Just to be clear, is the monitor liquidating assets then, or is the company with the monitor's approval liquidating? The company with the monitor's approval. So the company's been liquidating assets. Yes. The monitor has just been saying, yes, that's okay, or no, that's not okay. But the monitor has not been ordering it to happen. No, Your Honor. The receiver is in place. The receiver is the one who would then say, I now am the actor who decides to liquidate or distribute. I believe that's right, Your Honor. Although the distribution would come pursuant to further court action. Right. And I think the liquidation here. But the receiver becomes the act taker, not the person who approves someone else who's proposing the liquidation. Yes, Your Honor. And I think here, as Mr. Gentile's counsel said, sort of when this was proceeding as it was meant to proceed, at the beginning it seemed that the monitor order was working and was strong enough. But I think because of Mr. Gentile's actions, we've seen that was unfortunately not sufficient to protect sort of the integrity of GPB Capital. And that is why the order prepared to sort of provide for this conversion to a receiver shift. If it turned out a monitor didn't have sufficient authority to really make this structure work. All right. Thank you. Thank you. Okay. We'll go to Mr. Kopp. Good morning. May it please the Court. Glenn Kopp from Mayor Brown, LLP, on behalf of Defendant FLE, GPB Capital Holdings, LLC. The district court correctly found that a receiver shift over GPB Capital became necessary because David Gentile, GPB's former CEO and manager, created real and imminent risks of harm to the company and investors in its managed funds when he caused GPB to be in violation of the amended monitor order. And I want to go right to the questions that Your Honors have posed regarding the process for the appointments and whether Mr. Gentile believed that he had actually submitted requests or asked for the monitor's approval or actually done something affirmative. And the record is clear. It's uncontested that Mr. Gentile appointed the managers without approval of the monitor. He did not notify the actual CEO, Mr. Shamil, that he was doing this. And then, and he obviously didn't get the monitor's approval until after it was done. And the evidence of that, also uncontested, is that those managers, once in place, again, without notifying Mr. Shamil, without notifying the monitor, amended the company's operating agreement. And as part of that, they gave themselves, with Mr. Gentile's support, up to $400,000 a year for all three of them, so long as they hit certain marks in terms of the work they did. No limitations, no procedure for who would approve the submissions of their invoices or proof of actual work. Could you just clarify that? It sounds like you're saying that when he did it, it took effect. Yes. So what is your view on what GPB's action was when they said something to the effect that we reject this or we don't recognize this or I can't remember what the exact wording was? What was that legal effect of that? Well, the hopeful effect was that they would stand down and they would withdraw. But what we saw is that they didn't. In fact, first you had Mr. Gentile's letter, right, which was received on the 31st, sent on the 27th, received on the 31st of May after Memorial Day weekend, where he wrote, I expect, this is a quote, I expect that the Gentile managers, as we call them, will be given full and immediate access to GPB, its officers and employees, and any other resources or information requested by them to fulfill their mandate as managers. Although you retain your role as CEO, you should immediately cease any and all actions taken or to be taken in the capacity as managers. So I guess I'm just going back to the question of is your view that he did it, it took effect, and that it had effect until he took it back? That's right, Your Honor. So again, what was, I don't understand what the nature of the GPB statement, we don't recognize this or something, I don't understand that. I understand why the CEO could say I don't like it or whatever, but it sounded like, you know, we don't recognize it, it sounded something like, we don't think this is something that's happened because you need preapproval of the monitor and therefore say what you want, it didn't happen. Just can you drill down and tell me what the meaning of GPB's action was? Yeah, absolutely, Your Honor. The meaning of GPB's action was that GPB's view was that those appointments should have gone first for approval to the monitor. They did not. GPB has respected the authority of the monitor throughout the application of the monitor order and the amended monitor order. So in their view, had they then began working with those managers that Gentile appointed, they would be running afoul of the order and run afoul of the authority of the monitor, who they'd been working with for over a year at that point. And again, Gentile's withdrawals and their withdrawals didn't happen until after the report and recommendation in July of 2023. So the idea that they were up for approval and they didn't get approved and nothing happened, why then did they need to withdraw? Why did Gentile need to reassert his ability to appoint and amend after the report and recommendation? He was voluntarily agreeing not to do it again, not to unilaterally act. So for months, over a year, these managers, who also, by the way, were allegedly legitimately appointed, not just based on the Delaware law documents, but there was an argument, there was an affidavit put in in support of the appointments and Mr. Gentile's actions under Delaware law. So even after the monitor said, you're in violation, you've caused a violation of the order, they didn't say, you're right, you have not approved, we step down. They continued to push. You're criticized in your opponent's papers for failing to distribute anything, come up with any kind of plan. Could you address that complaint? Sure, Your Honor. The record shows that up until May 27th, management at GPB, as well as the monitor, were working on a distribution plan under the monitorship. I think the last record, according to the monitor and his affidavit in support of the receivership, was May 26th, 2022. It was the last meeting between GPB management and the monitor regarding a potential distribution plan. The next day, Gentile took his actions. So up to that point, they were working. It is very complicated. So at that point, things stopped because we now had the three managers saying, stop what you're doing, no liquidations. You had Gentile saying, stop what you're doing as manager until you work with my appointed managers. And they had 75 percent of the voting power. So when he says work with them and find consensus, that is not consensus. What he's seeking is capitulation. Because if the one manager who was there, Mr. Kmele. Once they were out, once the district court said no, I guess, I don't know if this is going to Judge Carney's question, why no movement after that? It's been a while. So a couple of things, Your Honor. Right after that, we had initially the district court said no. The receivership started, right? Receivership started for about a week. And once the receiver is in, the receiver has 45 days to submit his plan. So that clock was about to start or technically did start for a few days. He had 45 days at that point. Then there was the stay. The judge ordered the stay. We've been sort of in this no person's land, so to speak, in which there's a receiver potentially coming. And the idea of trying to do a distribution plan under a monitorship that is going to be short-lived is, frankly, a huge waste of money. Just remind me, has there been a representation by the monitor that if cleared to become the receiver, presumably by us, that the monitor will be able to propose a distribution plan within 45 days? That's right, Your Honor. I think he's required under the receivership order. And he's represented that he thinks he can do that. That's correct, Your Honor. Thank you. All right, Mr. Derington, you have one minute to revoke. Mr. Derington, I apologize. I have a question for you. Yes. I know you only have a minute, but you represent Schneider and Ascendant Capital. Correct, Your Honor. What dog do you have in this fight? Why do you have standing to complain about what does or doesn't happen to GBP? And it's probably an obvious question or an answer, but just can you enlighten me? Sure. And I'll just note at the outset that this was not something that was challenged. I'm curious. I'm just asking. But we have standing, first, because of the privilege issues. There's a common and there's also joint privilege. Yeah, you're afraid the receiver might waive your privileges. Okay, that's one thing. What else? Mr. Schneider is also a limited partner in certain of the funds that are at issue here. And that brings me to a point, which is that even if Mr. Gentile were arguably found to have waived and consented to this order and that there was a violation by him, Mr. Schneider, there is no finding as to that, too. And so this circuit's precedents are still intact. And I would also urge the Court and caution the Court not to uphold this drastic and extraordinary form of relief based on the alleged violation of the monitorship order, given this Court's precedent that it has to be clearly necessary to protect property. And as a last resort, because the SEC admits on appeal, on page 13 of its brief, that the court-appointed monitor without the receivership, quote, has succeeded in marshaling and preserving the assets. That is the requirement. And that has to have failed in order for there to be receivership. And what's more, the monitor stated before the district court entered the decision in a declaration below that the management itself of GPB, quote, has cooperated with the monitorship, sorry, have been, quote, good stewards of investor capital and, quote, has cooperated with the monitorship and proven effective in aspects of managing the day-to-day operations of the general partner and remaining investments of the GPB funds. So we would submit there is actually no dispute that today and back when the decision was entered, the assets of the GPB have been preserved and marshaled. And that means under this Court's precedent and Supreme Court precedent, there can be no need as a matter of law to take that much more drastic step of appointing a receiver to achieve the same ends. Except your co-counsel here complains that the receiver and monitor have done or the monitor has done a terrible job by not affecting the distribution. That's part of the mandate and part of the criticism and they've been taking fees but not affecting any return of investments income to the investors. I think the context of that argument is that the monitor and GPB are trying to explain why there has been no distribution to date. And even in the SEC's brief point to Mr. Gentile, who they want to have nothing to do with this company, and say he hasn't even proposed a distribution plan. And so the response is a defense to that. But doesn't it actually – but the merits of the case are that there was no clear necessity to protect the property because it's now admitted on appeal that the property is protected, which goes to this Court's equity jurisdiction. And the lack of a finding of success on the merits below is also good. I thought investors, though, were having to pay taxes on gains that were realized in paper but have received no distribution for years and years now. Is that right? Well, my client – my clients, Ascending Capital and Mr. Schneider and Mr. Gentile, also support a reasonable plan of distribution. They're not the ones who are able to – You haven't proposed any, have you? We are – Have you proposed a plan of distribution over all these years? No. And, in fact, I think the SEC would probably file a new motion for receivership if Mr. Gentile or Mr. Schneider sought to involve themselves in distribution. I'm not asking whether you asked to involve yourself, but whether you proposed a plan for execution by GPB. But the answer was no. Correct. There has been no invitation to get involved in that process, and so there hasn't been to date that I'm aware of. Thanks. Thank you, Your Honors. We'll give Ms. Riviere a go for one minute. So, Your Honor, what I was addressing, Judge Carney asked about, was the response that you were given as to why there has been no distributions to date is certainly it's lacking, because the monitor order specifically says that the monitor has the authority to approve or disapprove of resumption of distributions to investors. And, in fact, the monitor and GPB have spent millions of dollars on this proposed plan. They did it before, and they've done it since. But what you're saying is that they were getting close to having a plan complete, and then Mr. Gentile took this action of appointing three new managers. And there was nothing. They went through everything into disarray. That seems plausible. They would be ill-advised to make a distribution that would be subject to clawback. Well, that's not, in fact, what would happen, Your Honor, because the amended monitor order specifically gives the monitor the ability to do that. So it is under the court auspices that the monitor could make the distributions. Except that now a receiver has been appointed and it's all been stayed. So you would agree the case seems to have been in limbo since all that happened, where it's uncertain is there a receiver supposed to be doing this or somebody else, right? That was as of December, Your Honor. I'm talking about in the three years before that there's no reason why the monitor and GPB couldn't have done that, especially given the amount of money that they spent to develop a distribution plan. And to your question, Judge Nardini, you asked what exactly did GPB say. They said, we do not recognize you as validly appointed managers. We do not accept the amended and restated limited liability. But under the affidavit that your client submitted from the former judge of Delaware, I assume GPB doesn't get to say I recognize or don't recognize, right? Well, Your Honor. That it was valid, right? Your client's view is that your client made the appointments, he was allowed to do it, and it happened. Yes. Right? Yes. So whatever they said is just white noise in the background, I would assume, if that's the legal term. It's not white noise in the background because this letter specifically references what the monitor did. And it is the monitor. I thought your client's position is that's irrelevant. That what you did did not violate at all. And therefore, what you did was valid. And it happened. And it's true. And it's right. No. Our position was that the appointments themselves did not cause any violation. And that the amended monitor order operated exactly as it should have.  I'm saying that I thought it was your view that the appointments happened. Yes, they did. Okay. The appointments were made. And they were specifically disapproved exactly as amended monitor order provides for them to occur. So there was no violation of the order. And there's no justification for a receivership. Thank you. Thank you, everybody. That was our decision. Have a good day.